IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James T. Bollinger,               :
              Appellant        :
                                 :
          v.               :  No. 2031 C.D. 2016
                                 :  Argued:  October 19, 2017
School District of Cheltenham   :
Township, Natalie Thomas,     :
Ph.D., Lynn David and        :
Dwight E. Nolt              :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                 HONORABLE ROBERT SIMPSON, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT            FILED: December 7, 2017

       James T. Bollinger appeals an order of the Court of Common Pleas of Montgomery County (trial court), which agreed with the Board of School Directors of Cheltenham School District that Bollinger was not entitled to an administrative hearing on the termination of his contract as the junior varsity (JV) soccer coach. The School District so held because Bollinger received all the compensation authorized in his contract notwithstanding his discharge. Bollinger argues that the trial court erred. He contends that he was entitled to a hearing under the Public School Code of 1949[1] (School Code) and, further, the School District's stated reason for his discharge, *i.e.,* that he did not report a student hazing incident, lacks merit. In its Pennsylvania Rule of Appellate Procedure 1925(a)[2] opinion, the trial court

---

[1] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§1-101 – 27-2702.

[2] It provides, in pertinent part, that

observed that its order concerned only one count of Bollinger's six-count[3] complaint against numerous defendants. As such, the trial court concluded that its order was not appealable under Pennsylvania Rule of Appellate Procedure 341(b)(1) (defining a "final order" as one that "disposes of all claims and of all parties"). Agreeing with the trial court, we quash Bollinger's appeal.

On August 17, 2014, Bollinger signed a one-year contract with the School District to coach the boys' high school JV soccer team. The contract provided compensation in the amount of $4,620.

On September 19, 2014, Bollinger was supervising the JV and varsity teams on a school bus while being transported back to the high school after their games. Several varsity players lifted a JV player (Student "J") by his underwear, a stunt known as receiving a "wedgie." They also shook Student J causing his underwear to rip, which is called being "ripped." Because Bollinger neither investigated nor reported the incident, the School District discharged Bollinger before completion of his contract. Nevertheless, the School District paid Bollinger the full compensation of $4,620.

On February 26, 2015, Bollinger filed a complaint against the School District for defamation and breach of contract. On April 28, 2015, Bollinger amended the complaint to add as defendants Natalie Thomas, Lynn David and Dwight E. Nolt, who work for the School District in various administrative

---

upon receipt of the notice of appeal, the judge who entered the order giving rise to the notice of appeal, if the reasons for the order do not already appear of record, shall forthwith file of record at least a brief opinion of the reasons for the order, or for the rulings or other errors complained of, or shall specify in writing the place in the record where such reasons may be found.

PA. R.A.P. 1925(a)(1).

[3] Bollinger's amended complaint lists five counts, but Count IV is listed twice.

2

positions.[4]  The amended complaint dropped the breach of contract claim against the School District and added several new counts.  With these amendments, the pleading presented six counts:  Count I asserted a defamation claim against Lynn David for suspending Bollinger pending an investigation.  Count II asserted a defamation claim against Dwight Nolt for prohibiting Bollinger from attending high school games.  Count III asserted a defamation claim against Lynn David for charging Bollinger with condoning a hazing incident by students.  Count IV asserted a defamation claim against Natalie Thomas for implying at a public meeting that Bollinger had not handled the school bus incident appropriately.[5]  Count IV, which is listed twice in the complaint, sought a declaratory judgment that the School District had improperly terminated Bollinger's employment without giving him notice of his right to a hearing.  Count V asserted a claim for tortious interference with contract against Thomas for ordering Bollinger's discharge.

The defendants filed preliminary objections.[6]  On November 18, 2015, the trial court overruled the preliminary objections to the declaratory judgment count, concluding that Bollinger was entitled to a hearing on his dismissal under Section 514 of the School Code.  Section 514 states as follows:

> The board of school directors in any school district, except as herein otherwise provided, shall after due notice, giving the reasons therefor, and after hearing if demanded, have the right at any time to remove any of its officers, employes, or appointees

---

[4] On January 9, 2017, a notice of non-participation in the appeal to this Court was filed by Thomas, David, and Nolt.

[5] According to the complaint, Thomas stated at a public meeting that there was a hazing culture on the soccer teams that was being investigated and promised that action would be taken against the responsible adult supervisor.  Because everyone knew Bollinger had been suspended, it was obvious that the statement applied to him.

[6] One Defendant, Thomas, did not file a responsive pleading; the trial court noted she may not have been served.

3

> for incompetency, intemperance, neglect of duty, violation of any of the school laws of this Commonwealth, or other improper conduct.
>
> On the removal by the board of school directors of any officer, employe, or appointee, such officer, employe, or appointee shall surrender and deliver to the secretary, or other person designated by the board, any and all papers, property, and effects of the school district in his hands at the time of such removal.

24 P.S. §5-514. The trial court remanded the matter to the School Board for a hearing and stayed the disposition of the remaining preliminary objections, pending exhaustion of Bollinger's administrative remedies.

The School Board appointed A. Kyle Berman, Esq. to serve as hearing officer. At the outset of the hearing on January 26, 2016, the School District objected to the Section 514 hearing. It acknowledged that a non-professional school employee terminated before the conclusion of a contract is entitled to a hearing, but relief is limited to the compensation amount stated in the contract. Because Bollinger was paid in full, there was nothing to be decided. Nonetheless, the School District conceded that the trial court's order required an administrative hearing, and it proceeded.

The School District's first witness was Scott Layer, the Vice-Principal and Director of Athletics. Layer testified that on September 22, 2014,[7] he received an e-mail from a reporter at *Philadelphia Magazine* claiming to have learned of a hazing and bullying problem in the athletics department and that "the JV soccer coach had used the tiresome phrase 'boys will be boys' when presented with the issue." Reproduced Record at 198 (R.R. __).

---

[7] The email is dated September 19th. Layer advised he did not read it until September 22nd.

Layer questioned the head soccer coach, Chuck Gesing, who responded that he was unaware of any problems. However, after questioning the varsity players, Gesing learned of the school bus incident and so advised Layer. The next day, Layer suspended Bollinger pending the investigation.

Layer testified about the anti-hazing policy set forth in the Athletic Policy Handbook,[8] which Bollinger received. The handbook defines hazing as follows:

> *Hazing is any action which recklessly or intentionally endangers the mental or physical health or safety of a student* or which willfully destroys or removes public or private property for the purpose of initiation or admission into or affiliation with, or as a condition for continued membership in, any organization operating under the sanction of or recognized as an organization by an institution of higher education. The term shall include, but not be limited to any brutality of a physical nature, such as whipping, beating, branding, forced calisthenics, exposure to the elements, forced consumption of food, liquor, drug or other substances and other forced physical activity which could adversely affect the physical health and safety of the individual, and *shall include any activity which would subject the individual to extreme mental stress*, such as sleep deprivation, forced exclusion from social contact, forced conduct which could result in extreme embarrassment, or any other forced activity which could adversely affect the mental health or dignity of the individual, or any willful destruction or removal of public or private property.

R.R. 180 (emphasis added). Addendum "F" of the Athletic Policy Handbook provides a second, more generalized definition of hazing:

> *All verbal, written, or physical conduct, which harasses, humiliates, persecutes students, or disrupts or interferes with any*

---

[8] The handbook submitted into evidence was for the 2015-16 school year. Layer stated that the handbook has not changed in the last ten years. The only update is on the cover page, which is changed to reflect the current school year.

*student's curricular or extracurricular experiences* shall not be tolerated.

R.R. 192 (emphasis added). Bullying is not defined or specifically mentioned in the handbook. However, Layer testified that "bullying" was subsumed in the handbook's prohibition against unsportsmanlike conduct and its requirement that coaches advance sportsmanship.

Layer explained that each year he holds a preseason meeting with coaches and the players, which, *inter alia*, addresses hazing and bullying. In these sessions Layer shares his own personal experiences "because [he] want[s] to make it real." Notes of Testimony at 28; R.R. 56. Layer stated that he reminds all coaches at these preseason meetings that they must report any hazing or bullying incidents directly to him.

Iris Parker, the high school principal, was the next witness. After learning that an incident occurred on a school bus, she obtained a video recording from the bus company and viewed it.[9] The video shows two camera angles, one from the front of the bus, the other from the back; it does not contain audio. Parker testified that the video shows the varsity players passing Student J "from one set of hands to the other, and then the third young man was literally shaking him." N.T. 43; R.R. 71. Parker agreed that bullying is not defined or specifically mentioned in the Athletic Policy Handbook. However, she also asserted that bullying was subsumed in the handbook's prohibition against unsportsmanlike conduct and requirement that coaches advance sportsmanship.

Lynn David, Human Resources Director, testified. She explained that she is responsible for the conduct of School District employees, not students. She

---

[9] The hearing officer watched the video during the hearing. The video was not admitted into evidence.

interviewed Bollinger, viewed the video, and authored a letter on September 23, 2014, suspending Bollinger with pay, pending the outcome of the investigation.

David testified that the video footage shows almost everyone on the bus looking toward the back of the bus throughout the incident. At her interview of Bollinger on October 3, 2014, the two watched the video together. Bollinger claimed that he saw only part of the wedgie incident. Further, when Student J walked back to his seat, Bollinger heard him say "that wasn't too bad or that didn't hurt." N.T. 55; R.R. 83. As such, Bollinger did not believe he needed to intervene. Bollinger told David that he did not report the incident because it did not seem reportable. Bollinger admitted that when the head coach asked about the incident, Bollinger did not disclose that he had actually witnessed it.

David recommended to Natalie Thomas, the School District's Superintendent, that Bollinger be discharged. When her recommendation was accepted, David wrote to Bollinger on October 15, 2014, advising him that he was permanently relieved of his coaching duties but that he would receive all the compensation owed to him under the contract. The discharge was based on Bollinger's (1) failure to report bullying and hazing to the head coach or School District administration and (2) failure to share knowledge of the incident when questioned by the head coach.

Bollinger testified. He explained that he has been coaching at the School District since 1987 and understands the need to be vigilant about student bullying. In fact, in the past he has reported instances of bullying to the varsity coach. Bollinger testified that he did not report the incident on the bus for several reasons. First, he did not see the entire incident. He was sitting in the front of the bus to monitor the bus driver. When something drew his attention to the back of the

7

bus he saw a senior varsity player lifting Student J. In response, Bollinger "waved and yelled, sit down, which [he] usually [does if they are] standing up for any period of time on a moving bus, and they sat down." N.T. 99; R.R. 127. Second, as Student J was returning to his seat, Bollinger "heard him, say, that didn't hurt, and he sat down." *Id.* Bollinger stated that the bus ride ended about one minute later. Bollinger considered the incident "horseplay," and not one of hazing. N.T. 108; R.R. 136.

When the head coach contacted Bollinger, he told Bollinger there was going to be an investigation of the school bus incident. Bollinger did not tell the head coach what he knew about the incident because he decided it was not his place to "fill in the blanks for him" or "confuse what he knows with what I saw" in light of the investigation. N.T. 103, 104; R.R. 131-32.

Bollinger acknowledged that he was given an Athletic Policy Handbook every year at preseason camp, but he had never read it until after the school bus incident. He agreed "you have to step in all the time" with high school boys. N.T. 107: R.R. 135.

On cross-examination Bollinger acknowledged that the video showed him looking in the general location of the incident. However, the video was taken from the roof of the bus not at eye level. Bollinger testified he did not have a clear view because he was seated in the front of the bus. The video shows Student J lifted up by his underwear twice, but Bollinger testified that he only saw it happen once. He did not believe that what he saw constituted hazing or bullying. Had he seen everything that was recorded on the video, Bollinger stated that he would have intervened.

The hearing officer issued a recommended adjudication. He concluded, as a matter of law, that Bollinger was not entitled to a hearing because his

employment contract was for a one-year period, and he was fully paid. By the time of hearing, the one-year contract period had expired. Thus, even if Bollinger had sought reinstatement, which he did not, it could not have been awarded.

On the evidence, the hearing officer concluded that it established that Bollinger had acted in neglect of his duty, violated school policies, and acted improperly. The hearing officer found the School District's witnesses credible. He did not credit Bollinger's claim that he did not witness the entire incident. Based on the video, the hearing officer specifically found that Bollinger witnessed the entire incident. The hearing officer rejected Bollinger's argument that the school bus incident did not constitute bullying or hazing, as those terms are defined in the Athletic Policy Handbook and, thus, the incident should have been reported.

The record does not contain the School Board's order adopting the hearing officer's recommended adjudication. Instead, the record contains an e-mail dated August 10, 2016, from the School District's attorney to Bollinger's counsel, which states as follows:

> The board adopted the attached adjudication [the hearing officer's recommended adjudication] at its July 26 meeting. I apologize for the delay in sending it to you. Your deadline to appeal will start from today.

Certified Record (C.R.), Section 2 at 5.

On September 9, 2016, Bollinger filed a petition for review of his discharge pursuant to Pennsylvania Rule of Appellate Procedure 1531.[10] The

---

[10] Rule 1531 provides:

> (a) Appellate jurisdiction petition for review proceedings. A party to a proceeding before a government unit that resulted in a quasijudicial order may intervene as of right in a proceeding under this chapter relating to such order by filing a notice of intervention (with proof of service on all parties to the matter)

9

petition was docketed with the trial court under the docket number of the pending civil action and sought review of the hearing officer's adjudication under Section 933(a)(2) of the Judicial Code.[11] Specifically, Bollinger challenged the determinations that he was not entitled to a Section 514 hearing and his discharge was valid.

The trial court conducted a hearing, at which no new evidence was presented, and affirmed the "Adjudication of the Hearing Officer." Rule 1925(a) Op. at 7. In its Rule 1925(a) opinion, the trial court held that Bollinger was not entitled to a Section 514 hearing because his sole property interest in the one-year contract was compensation in the amount of $4,620, which he received. Bollinger did not claim that he was entitled to a renewal of the contract. On the merits, the trial court held that the evidence fully supported the conclusion that Bollinger

> with the prothonotary of the appellate court within 30 days after notice of the filing of the petition for review ….
>
> (b) Original jurisdiction petition for review proceedings. A person not named as a respondent in an original jurisdiction petition for review, who desires to intervene in a proceeding under this chapter, may seek leave to intervene by filing an application for leave to intervene (with proof of service on all parties to the matter) with the prothonotary of the court. The application shall contain a concise statement of the interest of the applicant and the grounds upon which intervention is sought.

PA. R.A.P. 1531.

[11] It states:

> (a) General rule.--Except as otherwise prescribed by any general rule adopted pursuant to section 503 (relating to reassignment of matters), each court of common pleas shall have jurisdiction of appeals from final orders of government agencies in the following cases:
>
> ***
>
> (2) Appeals from government agencies, except Commonwealth agencies, under Subchapter B of Chapter 7 of Title 2 (relating to judicial review of local agency action) or otherwise.

42 Pa. C.S. §933(a)(2).

neglected his duty, violated school laws and acted improperly. The trial court recommended that Bollinger's appeal to this Court be quashed because its order did not "dispose[] of all claims and of all parties" in the civil lawsuit and, thus, was not a final and appealable order. Rule 1925(a) Op. at 5; Pa. R.A.P. 341(b)(1).

On appeal, Bollinger raises four issues: (1) the trial court's order was final and appealable; (2) he was entitled to a hearing under Section 514 of the School Code; (3) the evidence did not support the finding that the school bus incident constituted hazing; and (4) the evidence did not show that he neglected his duty, violated school policies or acted improperly.

We begin with whether Bollinger has appealed a final order. Bollinger notes that this Court has exclusive jurisdiction over appeals of a final order of a trial court in local agency appeals. 42 Pa. C.S. §762(a)(4)(i).[12] He then concludes that all of the counts in the amended complaint rise or fall on the claim that he was improperly terminated by the School District. Therefore, the trial court's order is final pursuant to Pennsylvania Rule of Appellate Procedure 341(b)(1).

The School District responds that the trial court's order did not dispose of all of the claims of all of the parties in the civil action. Bollinger's civil lawsuit contains multiple claims against multiple parties. Bollinger seeks damages for defamation against the School District and three School District employees.

---

[12] It provides, in relevant part, as follows:

> (a) General rule.--Except as provided in subsection (b), the Commonwealth Court shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas in the following cases:
>
> \*\*\*
>
> (4) Local government civil and criminal matters.—
>
> (i) All actions or proceedings arising under any municipality, institution district, public school….

42 Pa. C.S. §762(a)(4)(i).

11

Rule 341 establishes, in relevant part:

(a) General Rule.--Except as prescribed in paragraphs (d) [relating to appeals of Superior Court and Commonwealth Court orders] and (e) [relating to criminal orders] of this rule, an appeal may be taken as of right from any final order of a government unit or trial court.

(b) Definition of Final Order.--A final order is any order that:

(1)    disposes of all claims and of all parties; or

(2)    RESCINDED

(3)    is entered as a final order pursuant to paragraph (c) of this rule.

PA. R.A.P. 341(b).  Rule 341(c) explains:

When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim or when multiple parties are involved, the trial court or other government unit may enter a final order as to one or more but fewer than all of the claims and parties only upon an express determination that an immediate appeal would facilitate resolution of the entire case. Such an order becomes appealable when entered. In the absence of such a determination and entry of a final order, any order or other form of decision that adjudicates fewer than all the claims and parties shall not constitute a final order ….

PA. R.A.P. 341(c).

The trial court's order addressed one count in Bollinger's civil action. That count sought a declaratory judgment that Bollinger's discharge was invalid because he had not been given either notice of his right to a hearing or a hearing under Section 514 of the School Code.[13]  Generally, decisions made on school

---

[13] It states, in relevant part:

12

employee discipline are appealable under Section 752 of the Local Agency Law, 2 Pa. C.S. §752.[14]  However, Bollinger raised the issue of his termination in one count in his civil action.  Using the doctrine of primary jurisdiction, the trial court transferred this count to the School District for a Section 514 hearing.[15]

Notably, an appeal of the trial court's order could have been effected. Bollinger could have sought certification from the trial court that an immediate appeal was warranted pursuant to Rule 341(c) ("[T]he trial court or other government unit may enter a final order as to one or more but fewer than all of the claims and parties only upon an express determination that an immediate appeal would facilitate resolution of the entire case.").  Bollinger did not choose this route.

---

> The board of school directors in any school district, except as herein otherwise provided, shall after due notice, giving the reasons therefor, and after hearing if demanded, have the right at any time to remove any of its officers, employes, or appointees for incompetency, intemperance, neglect of duty, violation of any of the school laws of this Commonwealth, or other improper conduct.

24 P.S. §5-514.

[14] It provides:

> Any person aggrieved by an adjudication of a local agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals by or pursuant to Title 42 (relating to judiciary and judicial procedure).

2 Pa. C.S. §752.

[15] As this Court has explained:

> [T]he doctrine of primary jurisdiction permits the bifurcation of a plaintiff's claim, whereby a trial court, faced with a claim requiring the resolution of an issue that is within the expertise of an administrative agency, will first cede the analysis of the issue or issues to that agency. Once the agency resolves the particular issue or issues over which it has primary jurisdiction, the trial court may proceed, if necessary, to apply the agency's decision to the dispute remaining before the trial court.

*Pettko v. Pennsylvania American Water Company*, 39 A.3d 473, 479 (Pa. Cmwlth. 2012).

Nor did he assert that the trial court's order is appealable as a collateral order.[16] We decline to consider that issue *sua sponte*.

As noted, Pennsylvania Rule of Appellate Procedure 341 defines a final order as "dispos[ing] of all claims and of all parties[.]" PA. R.A.P. 341(b)(1). On its face, the trial court's order has not disposed of all claims or all parties in the complaint, which lists six counts[17] against four parties. The trial court's order involves only one of the counts against one party, *i.e.*, the request for a declaratory judgment that Bollinger was terminated without proper cause. Amended Complaint Count IV (second); R.R. 230. The other counts remain outstanding before the trial court.

Because the trial court's order was not final and appealable, we quash Bollinger's appeal.

_____
MARY HANNAH LEAVITT, President Judge

---

[16] An interlocutory appeal may be taken as of right from a collateral order pursuant to Pennsylvania Rule of Appellate Procedure 313. It states:

> A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

PA. R.A.P. 313(b). The collateral order doctrine is "construed narrowly" and "an appellant must satisfy all three criteria set forth in Appellate Rule 313(b) in order to be entitled to an immediate appeal of a collateral order." *Pittsburgh Water and Sewer Authority v. Gladstone*, 999 A.2d 1248, 1254 (Pa. Cmwlth. 2010) (internal quotations omitted). Bollinger has not asserted that the trial court's order satisfies the above three criteria.

[17] The amended complaint lists five counts, but Count IV is listed twice.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| James T. Bollinger, | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 2031 C.D. 2016 |
| | : | |
| School District of Cheltenham | : | |
| Township, Natalie Thomas, | : | |
| Ph.D., Lynn David and | : | |
| Dwight E. Nolt | : | |

## **O R D E R**

AND NOW, this 7th day of December, 2017, the appeal of James T. Bollinger from the order of the Court of Common Pleas of Montgomery County, dated November 14, 2016, is hereby QUASHED.

_____

MARY HANNAH LEAVITT, President Judge